**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 18-14087-CV-MARTINEZ**
**MAGISTRATE JUDGE REID**

DARIUS STILL,

                Petitioner,

v.

SEC'Y, FLA. DEP'T OF CORR. et al.,

                Respondents.

## REPORT OF MAGISTRATE JUDGE

Petitioner, **Darius Still**, has filed a *pro se* Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [ECF No. 7]. His Petition attacks the constitutionality of his judgment of conviction in Case No. 43-2011CF000722-A, Nineteenth Judicial Circuit of Florida, Martin County. [*Id*.]. This case has been referred to the Undersigned for consideration and report. [ECF No. 16]. The Undersigned has reviewed the entire record. Upon such review, and as further discussed below, the Amended Petition [ECF No. 7] should be **DENIED**.

### I.　　Background

A.　　Indictment

The state charged Petitioner with one count of possession of cocaine with intent to sell within 1,000 feet of a convenience business. [ECF No. 13-1, p. 5[1]]. The case went to trial.

B.　　Trial Testimony

1.　　*Det. Kryzda*

---

[1] All page citations for ECF entries refer to the page-stamp number located at the top, right-hand corner of the page.

Kryzda is a detective with the Martin County Sheriff's Office ("Sheriff's Office"). [ECF No. 14-1, p. 97]. On June 22, 2011, Kryzda was working with a confidential informant ("CI"). [*Id.* p. 98]. Kryzda told the CI to purchase $140 worth of crack cocaine ("crack") and have the subject bring it to a specific location ("parking lot") in Stuart, Florida. [*Id.*]. The CI said that Petitioner was the subject. [*Id.* pp. 98-99]. In preparation, Kryzda searched a database and found Petitioner's profile, which included his image. [*Id.* pp. 103-04].

Kryzda listened to a conversation between the CI and Petitioner. [*Id.* pp. 100-01]. Petitioner said that he would bring the crack in five minutes. [*Id.* p. 109]. A short while later, as the vehicle entered the parking lot, the CI called Kryzda. [*Id.* p. 105]. A woman was driving the vehicle and Petitioner was seated in the backseat behind her. [*Id.* pp. 105-06]. Petitioner did not own the vehicle. [*Id.* p. 132].

As Kryzda measured using Google Earth, the parking lot was located 571 feet from Twin Plaza Chevron ("Chevron"). [*Id.* pp. 107-08].

Kryzda detained Petitioner. [*Id.* p. 108]. His voice was consistent with the voice from the phone call between the CI and the subject. [*Id.*]. Kryzda found a small white napkin with crack and a cannabis cigar ("blunt") next to Petitioner. [*Id.* p. 109]. Furthermore, he found a knotted, clear plastic bag on the passenger floorboard containing a larger amount of crack. [*Id.* pp. 117, 128]. Kryzda field-tested the substances to confirm that they were crack. [*Id.* p. 118]. The amount of crack in the white napkin was consistent with the amount of crack that Kryzda directed the CI to order. [*Id.* p. 120].

After another officer gave Petitioner a *Miranda*[2] warning, Petitioner agreed to speak to Kryzda. [*Id.* pp. 120-21]. Petitioner said that the drugs were his and that he used the crack to lace his blunts. [*Id.* p. 121].

The CI had been charged with cocaine possession and was working to reduce the charge. [*Id.* p. 123]. Kryzda had worked with the CI before. [*Id.*].

### 2.    *Meredith Reeves*

On the night in question, Reeves was working as a cab driver. [*Id.* pp. 139-40]. Petitioner had Reeves drive him to Palm City. [*Id.* p. 140]. During the trip, Petitioner was talking on the phone. [*Id.*]. He then asked her to stop for a second at the parking lot. [*Id.*]. Officers swarmed the car. [*Id.*]. Petitioner threw a clear package onto the passenger floorboard. [*Id.* pp. 141, 148]. Reeves owned the car. [*Id.* p. 146]. Reeves did not have crack in her car prior to this incident. [*Id.*].

### 3.    *Deputy ("Dep.") Baltes*

On the night in question, Baltes was working as a deputy for the Sheriff's Office. [*Id.* pp. 150-51]. Baltes moved in on a vehicle. [*Id.* pp. 152-53]. Petitioner raised his hands and his right hand made a throwing motion toward the front passenger seat. [*Id.* p. 154]. There, Baltes saw a plastic bag with a white substance. [*Id.*]. Baltes read Petitioner the *Miranda* warning from a card. [*Id.*] Petitioner said that he understood his rights. [*Id.* p. 155].

### 4.    *Det. Pickering*

On the night in question, Pickering was working as a detective for the Sheriff's Office. [*Id.* pp. 160-61]. He was at the parking lot, waiting for a black male to bring crack. [*Id.* p. 162]. Reeves and Petitioner arrived by car. [*Id.*]. After being told to raise his hands, Petitioner tossed a white substance in clear plastic onto the front passenger floorboard. [*Id.* p. 163]. Pickering removed

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Petitioner from the car. [*Id.* p. 164]. As he did, he saw a white napkin fall onto the ground from Petitioner's midsection. [*Id.*].

### 5.    *Judy Vaught*

Vaught worked at the Chevron as a manager. [*Id.* pp. 181-83]. On Sunday and Monday, it is open from 5 a.m. to midnight and the rest of the week it is open 24 hours. [*Id.* p. 182]. Its square footage is less than 2,000 sq. feet and none of Vaught's family members work there. [*Id.*]. The Chevron has five employees, but usually only one person works at a time. [*Id.* p. 183]. Between 11 p.m. and 5 a.m., only one employee works. [*Id.*].

### 6.    *Salvatore Recco*

Recco worked at a crime lab as a forensic chemist. [*Id.* pp. 185-86]. Recco analyzed the evidence recovered from the scene, namely, "some loose rock like material in a brown hand rolled cigarette, . . . an empty sandwich bag, and a piece of tissue paper." [*Id.* p. 188]. These items, collectively, contained cocaine and cannabis. [*Id.* p. 189].

## C.    Verdict and Post-Trial Proceedings

The jury found Petitioner guilty. [ECF No. 13-1, p. 32]. The trial court sentenced him to ten years in prison, followed by ten years of probation. [*Id.* p. 34]. Petitioner appealed. [*Id.* pp. 50-79]. The Fourth District Court of Appeals ("Fourth District") affirmed the trial court without a written opinion. [*Id.* p. 121].

## D.    Postconviction Proceedings

Petitioner filed an amended Rule 3.850 motion alleging four claims of ineffective assistance of trial counsel. [*Id.* pp. 147-61]. The postconviction court denied claim 3 and set the other three for an evidentiary hearing. [*Id.* pp. 190-92]. At the outset of the hearing, Petitioner abandoned claim 4. [ECF No. 15-1, p. 8]. After the hearing, the court entered an order denying

claims 1 and 2. [ECF No. 13-1, pp. 194-95]. Petitioner appealed. [*Id.* pp. 197-221]. The Fourth

District affirmed without comment. [ECF No. 13-2, p. 2].

During the pendency of his amended Rule 3.850 motion, Petitioner filed a habeas corpus

petition in the Fourth District alleging ineffective assistance of appellate counsel. [*Id.* pp. 6-13].

The Fourth District did not order the state to respond and denied the petition without comment.

[*Id.* p. 15].

E.    This § 2254 Case

Petitioner filed the instant Amended § 2254 Petition. [ECF No. 7]. Respondent filed a

Response and supporting documentation. [ECF Nos. 12; 13; 14; 15.] Petitioner did not file a reply

despite being told that he may do so within 30 days of the Response. [ECF No. 4].

## II.    Legal Standard Under 28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceeding.

Under § 2254(d)(1)'s "contrary to" clause, courts may grant the writ if the state court: (1)

reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2)

decides a case differently than the Supreme Court on materially indistinguishable facts. *See*

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under its "unreasonable application" clause,

courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *See id.* at 413. "[C]learly established Federal law" consists of Supreme Court "precedents as of the time the state court renders its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citation and emphasis omitted).

An unreasonable application of federal law differs from an incorrect application of federal law. *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted). Under this standard, "a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Courts "apply this same standard when evaluating the reasonableness of a state court's decision under § 2254(d)(2)." *Landers v. Warden*, 776 F.3d 1288, 1294 (11th Cir. 2015). That is, "[a] state court's . . . determination of facts is unreasonable only if no 'fairminded jurist' could agree with the state court's determination." *Id.* (citation omitted).

Under § 2254(d), "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion[,]" "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). But where the decision of the last state court to decide a prisoner's federal claim contains no reasoning, federal courts must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id.* "It should then presume that the unexplained decision adopted the same reasoning." *Id.*

### III.   Analysis

A.   <u>Claim 1</u>

Petitioner contends that the trial court violated his Fifth and Sixth Amendment rights by refusing to order the state to disclose the CI's identity. [ECF 7, pp. 19-23]. As discussed below, the state courts reasonably rejected this claim.

1.    *Pre-Trial Motion*

Petitioner filed a motion to produce the CI. The trial court held a hearing on this motion. The state presented the testimony of Det. Kryzda, Reeves, Dep. Baltes, and Det. Pickering. Their testimony was consistent with their trial testimony. *See* [ECF No. 14-1, pp. 11-50].

Petitioner testified that, on the night in question, Reeves was giving him a ride to see his baby's mother. [*Id.* p. 51]. He further testified that, while talking to his baby's mother on the phone, he told Reeves to pull over to avoid an oncoming vehicle. [*Id.* pp. 51-52, 54]. Thereupon, officers snatched him from the car. [*Id.* p. 52].[3] Petitioner testified that he did not throw anything when the officers detained him. [*Id.* p. 54]. Petitioner also denied telling the officers that he smoked blunts laced with crack. [*Id.* pp. 56-57].

The trial court denied Petitioner's motion to produce the CI. [*Id.* pp. 69-71]. The court reasoned that the CI was just a lead and that Kryzda "took over the investigation and[.] . . . monitored every bit of it . . . [when] he found out the information." [*Id.* p. 69]. Further, the court reasoned that there was "independent evidence of [Petitioner's] guilt," i.e., the eyewitness testimony from the driver and the officers who observed Petitioner with the recovered drugs. [*Id.* p. 70]. For these reasons, the court concluded that the CI had "very little relevance to [the] case." [*Id.*].

During Kryzda's testimony about his interactions with the CI, defense counsel renewed the objection. Counsel argued that he had not received an opportunity to cross-examine the CI about

_____

[3] Petitioner contends in his Amended Petition that "he never spoke to the [CI] and/or agreed to deliver or sell anything to the [CI]." [ECF No. 7, p. 20].

his/her conversations with Kryzda or his/her motives for providing Petitioner's name. [*Id.* p. 102]. The trial court overruled the objection and allowed Kryzda's testimony. [*Id.* pp. 98, 102-03].

Petitioner raised this claim on direct appeal. [ECF 13-1, pp. 68-70]. The Fourth District rejected it without comment. Therefore, the court must consider the reasonableness of the trial court's denial of the motion to produce the CI. *See Sellers*, 138 S. Ct. at 1192.

2.   <em>Discussion</em>

Petitioner contends that the state's failure to produce the CI violated due process and the Confrontation Clause. However, the Supreme Court has yet to clearly establish that the state's failure to produce a CI violates due process or the Confrontation Clause.

Petitioner relies primarily on *Roviaro v. United States*, 353 U.S. 53 (1957). There, the defendant argued that, during his federal criminal trial, the district court erred in upholding the government's right to withhold the identity of a CI under the informer's privilege. *See id.* at 54-55, 58-59. *Roviaro* reversed the court of appeals' decision affirming the district court. *See id.* at 56, 66. *Roviaro* held that the trial court erred by failing to disclose the CI because, under the particular circumstances of the case, disclosure was relevant and helpful to the defendant and essential to a fair determination of his guilt or innocence. *See id.* at 61-65.

However, *Roviaro* involved "the traditional governmental privilege to refuse disclosure of such an identity" and was not "decided on the basis of constitutional claims[.]" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 870 (1982); *see also McCray v. Illinois*, 386 U.S. 300, 311 (1967) ("[*Roviaro*] makes clear [] that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in *formulating evidentiary rules for federal criminal trials*." (emphasis added)). Thus, *Roviaro* does not clearly establish that the state's failure to produce a CI may violate due process or the Confrontation Clause. *See Premo v. Moore*, 562

U.S. 115, 128 (2011) (state-court adjudication of a constitutional claim cannot be contrary to a Supreme Court holding that does not involve the same constitutional provision).

Petitioner also relies on *McCray*, 386 U.S. 300. But *McCray* held that neither the Fifth nor Sixth Amendment requires states to disclose a CI when the state, through the testimony of officers, relies on the CI's information to establish probable cause at a probable cause hearing. *See id.* at 312-13. Thus, *McCray* did not clearly establish that the state's failure to produce a CI may violate due process or the Confrontation Clause. *Compare Williams*, 529 U.S. at 412 ("[The phrase 'clearly established federal law'] refers to the *holdings* . . . of [the Supreme Court's] decisions." (emphasis added)), *with United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) ("[T]he holding of a case is . . . comprised both of the result of the case and 'those portions of the opinion necessary to that result by which [courts] are bound.'" (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66-67 (1996))). Likewise, *McCray* is distinguishable because it involved only the "preliminary [issue] of probable cause[.]" *See* 386 U.S. at 311. In Petitioner's case, by contrast, the issue of "guilt or innocence [was] . . . at stake." *See id.*

Petitioner may respond that the fact that his guilt or innocence was at stake was all the more reason to disclose the CI. Again, however, no Supreme Court case (*Roviaro*, *McCray*, or otherwise) has clearly established that the state's failure to produce a CI whose identity may be relevant to the issue of guilt or innocence violates the Fifth or Sixth Amendment.

 In sum, the state courts' rejection of claim 1 was not contrary to, or an unreasonable application of, clearly established federal law and this claim should be denied.

B.      Claim 2

1.      *Petitioner's Argument*

Jack Fleischman served as both trial and appellate counsel. Petitioner contends that Fleischman ineffectively failed to argue that the trial court erred in overruling his hearsay objections to Kryzda's testimony about the CI. [ECF No. 7, p. 23]. *See also* [ECF No. 14-1, pp. 98-99, 101-03, 105 (counsel's repeated objections to Kryzda's testimony about the CI)]. Petitioner contends that the testimony was hearsay and that the state "used both to prove the truth of the matter (that Petitioner was on the phone with the C.I.) and an essential element of the crime (that Petitioner agreed to sell or deliver cocaine to the C.I.)." [ECF No. 7, p. 24]. Further, Petitioner contends that this testimony "had a substantial injurious effect or influence on the jury's verdict." [*Id.*]. This is because "[h]ad Kryzda's hearsay testimony . . . been properly excluded, the prosecution would have had <u>no</u> evidence to present to the jury that Petitioner possessed drugs <u>with the intent to sell or deliver</u>." [*Id.* (emphasis in original)]. For the same reasons, Petitioner contends that Fleischman ineffectively failed to argue that the admission of this testimony violated his "right to confront his accusers." [*Id.*].[4]

Petitioner raised the same argument in the Fourth District. [ECF No. 13-2, pp. 7-12]. The Fourth District did not order the state to respond and denied the petition without comment. [*Id.* p. 15]. Because there is "no lower court opinion to look to[,]" *Sellers*, 138 S. Ct. at 1195, "it may be presumed that the [Fourth District] adjudicated the claim on the merits," *Harrington*, 562 U.S. at 99 (citation omitted). Thus, "[s]ection 2254(d) applies even [though] there has been a summary denial." *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) (citation omitted). Because § 2254(d) applies, and because the last state court decision is unreasoned and there is no lower court decision to look to, this court "must determine what arguments or theories . . . could have supported[] the state court's decision[.]" *Harrington*, 562 U.S. at 102.

---

[4] At trial, Fleischman did not explicitly object to Kryzda's testimony about the CI on basis of the Confrontation Clause of the Federal or Florida Constitution.

2.       *The State's Response*

Respondent contends that Fleischman did not ineffectively fail to argue that the trial court

erred in overruling his hearsay objections because the testimony in question was not hearsay. [ECF

No. 12, pp. 42-43]. Rather, Respondent contends that Kryzda's testimony was limited to

statements that he heard Petitioner make over the telephone to the CI, which were admissible party-

opponent admissions. [*Id.*]. In support, Respondent reasons:

> Det. Kryzda heard Petitioner say he'd be at the meeting location within 5 minutes .
> . . . When Det. Kryzda spoke to Petitioner, he recognized Petitioner's voice as the
> same as the individual on the call with the CI earlier. . . . Therefore, . . . Det. Kryzda
> testified to an admission made by a party/opponent . . . that he heard himself, and
> identified Petitioner based on his subsequent interaction in person. Thus, no hearsay
> was admitted at trial. . . .
>
> . . . Petitioner failed to adequately show either deficient performance or prejudice.

[*Id.* p. 44].

3.       *Discussion*

*Strickland v. Washington*, 466 U.S. 668 (1984), "governs a claim of ineffective assistance

of appellate counsel." *Overstreet v. Warden*, 811 F.3d 1283, 1287 (11th Cir. 2016) (citation

omitted). "Under *Strickland*, a petitioner must show (1) his attorney's performance was deficient,

and (2) the deficient performance prejudiced the petitioner's defense." *Id.* (citing *Strickland*, 466

U.S. at 687). "When considering deficient performance, a court must presume counsel's

performance was within the wide range of reasonable professional assistance." *Id.* (citing

*Strickland*, 466 U.S. at 689).

"Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed

out weaker (albeit meritorious) arguments." *Id.* (citation omitted). "'Generally, only when ignored

issues are clearly stronger than those presented, will the presumption of effective assistance of

counsel be overcome.'" *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)); *see also Davila*

*v. Davis*, 582 U.S. ___, 137 S. Ct. 2058, 2067 (2017) ("Declining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." (citation omitted)).

"A petitioner satisfies the prejudice prong upon showing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Overstreet*, 811 F.3d at 1287 (quoting *Strickland*, 466 U.S. at 694). "'The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.'" *Id.* (quoting *Harrington*, 562 U.S. at 105).

Here, there is a reasonable argument that Fleischman did not deficiently fail to argue that the trial court erred in overruling his hearsay objections to Kryzda's relevant testimony. While Kryzda's testimony was somewhat disjointed, Kryzda clearly testified that he listened to a conversation between the CI and the subject and heard the subject say he would bring crack to the parking lot in five minutes. Furthermore, Kryzda testified that he recognized the voice of the person he detained as the subject's. A defendant's own out-of-court statement is not hearsay and, therefore, its admission does not violate the Confrontation Clause. *See United States v. Brown*, 441 F.3d 1330, 1358-59 (11th Cir. 2006) (citations omitted); *cf. Globe v. State*, 877 So. 2d 663, 673 (Fla. 2004) ("[S]tatements admitted as adoptive admissions do not implicate the Confrontation Clause."). Reeves testified that Petitioner was talking on the phone during the cab ride, further supporting a finding that Petitioner and the CI discussed a drug sale during a telephonic conversation that Kryzda listened to.

Other documents in the record confirm this reading of Kryzda's testimony. During the hearing on the motion to produce the CI, Kryzda testified that he directed the CI to order $140 worth of crack "as [he] listen[ed] on the phone call [to] what was agreed upon." [ECF No. 14-1,

p. 21]. Likewise, Kryzda's probable cause affidavit states: "After meeting with the informant, I listened to the informant place a phone call to [Petitioner] and arrange for him to bring $140.00 worth of crack to [the parking lot]." [ECF No. 13-1, p. 2].

On this record, Fleischman reasonably could have concluded that Kryzda testified about Petitioner's own statements and that, therefore, the trial court properly overruled his hearsay objections. *See* Fla. Stat. § 90.803(18)(a) (generally providing that a party's own statement offered against him is not hearsay); *see also Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim[.]" (citation omitted)). Evidence that Kryzda personally heard Petitioner's statements regarding the drug sale makes this case distinguishable from *Schaffer v. State*, 769 So.2d 496 (Fla. 4th DCA) and the related line of Florida cases, where the defendant's conviction was based upon a police officer's inadmissible hearsay.

Furthermore, Fleischman failed to object to Kryzda's testimony on Confrontation Clause grounds at trial. This failure is significant because, "[i]n most cases, an unpreserved trial error will not be a plainly stronger ground for appeal than preserved errors." *Davila*, 137 S. Ct. at 2067 (citation omitted). Petitioner has not alleged, much less shown, that this unpreserved error was a plainly stronger ground for appeal than the grounds Fleischman raised.

For these reasons, the Fourth District's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts and the claim should be denied.

C.     Claim 3

1.     *Petitioner's Argument*

13

Petitioner contends that Jack Fleischman (i.e., trial counsel) misadvised him with respect to the state's four-year plea offer and that this misadvice caused him to reject the offer and go to trial. [ECF 7, pp. 25-29]. In support, he contends that Fleischman never: (1) discussed alternatives to trial, such as a conditional plea; (2) discussed whether he should take the plea; or (3) informed him of the maximum sentence for the offense. *Id.*

2.     *Relevant Background*

The postconviction court held an evidentiary hearing on this claim. At the hearing, Fleischman and David Ginzer, petitioner's first attorney in the case, testified. [ECF 15-1, pp. 54-72]. Ginzer testified that: (1) the state offered Petitioner three years if he would plead guilty to a lesser offense; (2) he told Petitioner that he faced 30 years in prison; (3) Petitioner declined the offer and wanted to go to trial; (4) Petitioner wanted Ginzer to file a motion to suppress and a motion to produce the CI ("motions"); (5) Ginzer did not file the motions, apparently because he was concerned that the prosecutor would withdraw the plea offer; (6) Petitioner then hired Fleischman; and (7) Ginzer did not know if the three-year offer was on the table when Fleischman started to represent Petitioner. [*Id.* pp. 68-72].

Fleischman testified that: (1) Petitioner was "adamant" that he would not plead guilty unless the prosecutor went below four years; (2) the prosecutor would not go below four years; (3) petitioner wanted Fleischman to file the motions and go to trial; (4) Fleischman made a final attempt before trial to get the prosecutor to go below four years, which was refused; (5) Fleischman discussed the strengths of Petitioner's case with him; (6) Fleischman told Petitioner that he would get more than four years in prison if he went to trial and lost;  and (7) petitioner's defense was that the crack was not his. [*Id.* pp. 56-59, 63-66].

After the hearing, the postconviction court denied this claim. It reasoned:

14

[Fleischman] was ready for trial. . . . [Fleischman] explained to [petitioner] that if convicted he would likely get more than the plea bargain. [Petitioner] felt his case was good and refused to take the plea offer. . . . Just as he had done with [Ginzer], [petitioner] made the ultimate decision as to whether to plea. He was adamant in insisting upon going to trial.

. . . [Petitioner] is essentially blaming his lawyers for the gamble that he chose to take. He gambled and lost. He was not duped or coerced or misled by his attorney(s). . . .

[ECF No. 13-1 p. 194].

### 3.   *Discussion*

"The performance prong of *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citation omitted). And, under § 2254(d), "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Here, there is a reasonable argument that Fleischman did not misadvise Petitioner regarding the plea offer. Contrary to Petitioner's contention, Fleischman discussed "alternatives to trial." Fleischman testified that, despite Petitioner's insistence on going to trial, he made a last-ditch effort to get the prosecutor to go under four years. Further, while Fleischman did not inform Petitioner of the 30-year statutory maximum, he told Petitioner that he would get more than four years if he went to trial. Likewise, Ginzer testified that he informed Petitioner of said maximum. Thus, Petitioner was aware of the consequences of rejecting the state's plea offer.

Petitioner also seems to fault Fleischman for not convincing him to accept the plea offer. However, petitioner had "the ultimate authority . . . to plead guilty[.]" *Jones v. Barnes*, 463 U.S. 745, 751 (1983). In face of Petitioner's insistence on going to trial, it is unclear what else Fleischman could have done. Indeed, the hearing transcript indicates that Petitioner hired Fleischman to represent him at trial. And the fact that Fleischman advised Petitioner that his case

had certain strengths is not indicative of deficiency. This advice was true. Even if it was not, "a mistaken prediction is not enough in itself to show deficient performance[.]" *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996); *see Lafler*, 566 U.S. at 174 ("[A]n erroneous strategic prediction . . . is not necessarily deficient performance.").

Likewise, the postconviction court reasonably concluded that Fleischman's alleged misadvice did not prejudice Petitioner. To prove prejudice, Petitioner must show that, but for the misadvice, he would have accepted the plea. *See Lafler*, 566 U.S. at 164. However, the record supports the trial court's finding that Petitioner was adamant on going to trial, which was his ultimate decision to make. Furthermore, Petitioner has maintained his innocence at all stages of the case, which also belies the notion that he would have accepted the plea had Fleischman allegedly not misadvised him. *See Osley v. United States*, 751 F.3d 1214, 1224 (11th Cir. 2014) ("[The defendant's] claim that he would have pled guilty had he been properly informed is also undermined by his repeated claims of innocence.").

In sum, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts and this claim should be denied.

D.    Claim 4

1.    *Petitioner's Argument*

Petitioner contends that Fleischman deficiently failed to investigate the defense that the Chevron was not a convenience business under Florida law. [ECF No. 7, pp. 29-32]. In support, Petitioner notes that the definition of convenience business under Florida law excludes a "business that has at least 10,000 square feet of retail floor space." Fla. Stat. § 812.171(3) (2011). Further, Petitioner notes that Fleischman stated during the hearing on petitioner's amended Rule 3.850

16

motion alleging the same claim that he did not "make any type of independent determination as to whether this store qualified as a convenience store." [ECF No. 15-1, p. 66]. Additionally, Petitioner contends that Vaught's testimony that the Chevron's square footage was less than 2,000 sq. feet was hearsay to which Fleischman failed to object. [ECF 7, p. 30]. Moreover, Petitioner contends that Vaught's testimony "encompassed the store part of the business and not the complete business." [*Id.*]. Had Fleischman "conducted a cursory investigation he would have found that between the numerous gas pumps and the convenience store the business was much greater than 10,000 square feet." [*Id.*]. Petitioner adds, conclusorily, that Fleischman failed to investigate whether the owner or any of the owner's family members worked at the Chevron between the hours of 11 p.m. and 5 a.m., *see* [*id.*], which would have disqualified it as a convenience business as well, *see* Fla. Stat. § 812.171.

The postconviction court rejected this claim. It found that Petitioner's contention that an investigation would have shown that the Chevron was not a convenience business under Florida law lacked "substance" and was "all based on speculation." [ECF 13-1, p. 194]. Thus, it concluded that the claim "was totally meritless and frivolous." [*Id.*].

### 2.      *Discussion*

Here, again, Petitioner has failed to sustain his burden to prove ineffective assistance of counsel under *Strickland.* The postconviction court reasonably rejected this claim. Vaught testified at trial that the Chevron was less than 2,000 sq. feet. [ECF No. 14-1, pp. 182]. This alleged fact was within her personal knowledge as a long-time employee of the store and, in convicting Petitioner, the jury necessarily found this testimony credible. Furthermore, while Petitioner contends that Vaught testified about only the "store part of the business," the definition of convenience business excludes a "business that has at least 10,000 square feet of *retail floor*

space." Fla. Stat. § 812.171(3) (emphasis added). Thus, contrary to Petitioner's contention, it is arguable that this exclusion does not apply to the part of the convenience business where the gas pumps are located. Petitioner contends that a decision from the Fifth District Court of Appeals holds otherwise. [ECF No. 7, p. 31 (citing *Larry v. State*, 61 So. 3d 1205 (Fla. 5th DCA 2011))]. However, *Larry* is factually distinguishable, contains no analysis concerning the meaning of "retail floor space," and has not been cited by another court for the proposition for which petitioner cites it. In any event, there is no clear indication from Vaught's testimony that she was testifying about only the Chevron's "store part." *See* [ECF No. 14-1, p. 182]. And, even if she was, Petitioner only speculates that the "complete business" was 10,000 sq. feet or more. *See Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.").

Petitioner's remaining contentions are frivolous. Vaught testified that: (1) she was the manager of the store; (2) none of her family members worked there; (3) the Chevron was open 24 hours five days a week and until midnight two days a week; and (4) only one person worked from 11 p.m. to 5 a.m. This testimony, which the jury necessarily found credible, satisfied the definition of a "convenience business." *See generally* Fla. Stat. § 812.171; *see also Baker v. State*, 951 So. 2d 78, 80 (Fla. 1st DCA 2007) ("[I]n order for a store to fall within the definition of a 'convenience business,' it must be operating at any time during the proscribed hours on at least some semi-regular basis . . . ."). For these reasons, any investigation by Fleischman regarding these issues would have proved fruitless. Petitioner's speculation to the contrary is insufficient to carry his burden under both *Strickland* and § 2254(d).

In sum, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts and this claim should be denied.

### IV.     Evidentiary Hearing

"[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated [on the merits] by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record." *Landers*, 776 F.3d at 1295. Here, petitioner's claims were adjudicated on the merits, and he has not demonstrated an error in clearly established federal law or an unreasonable determination of fact. Thus, he is not entitled to an evidentiary hearing.

### V.     Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. 11(a), Rules Governing § 2254 Cases. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.* "If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." *Id.* "A timely notice of appeal must be filed even if the district court issues a certificate of appealability." Rule 11(b), Rules Governing § 2254 Cases.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a petitioner's constitutional claims on the merits, "a petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." A petitioner

satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citation omitted).

Here, in view of the entire record, a certificate of appealability should be denied as to all claims. If Petitioner disagrees with any of these recommendations, he may so argue in any objections filed with the District Court. *See* R. 11(a), Rules Governing § 2254 Cases ("Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.").

## VI.    Recommendations

As discussed above, it is RECOMMENDED that Petitioner's Amended Habeas Petition [ECF No. 7] be DENIED.  It is further RECOMMENDED that a certificate of appealability be denied as to claims 1, 3, and 4 but that a certificate of appealability be GRANTED as to claim 2 as specified above. It is finally RECOMMENDED that judgment be entered and the case closed.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

SIGNED this 4th day of January, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

Darius Still
166057
Sago Palm Re-Entry Center
Inmate Mail/Parcels
500 Baybottom Road
Pahokee, FL 33476
PRO SE

Heidi L. Bettendorf
Attorney General's Office
1515 N Flagler Drive
Suite 900
West Palm Beach, FL 33401-3432
561-837-5000
Fax: 837-5099
Email: CrimAppWPB@MyFloridaLegal.com